UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZERO MOTORCYCLES, INC., <br> Plaintiff, <br> v. <br> NIKOLA MOTOR COMPANY, et al., <br> Defendants. | Case No. 17-cv-05370-MEJ <br><br> **ORDER RE: MOTION TO DISMISS** <br> Re: Dkt. No. 37 |

## INTRODUCTION

Pending before the Court is Defendants' Motion to Dismiss the First Amended Complaint (FAC, Dkt. No. 36) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). Plaintiff Zero Motorcycles, Inc. filed an Opposition (Dkt. No. 39) and Defendants filed a Reply (Dkt. No. 40). The Court finds this matter suitable for disposition without oral argument and vacates the June 28, 2018 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** Defendants' Motion for the following reasons.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**BACKGROUND**

Plaintiff is a manufacturer of high-performance electric motorcycles, including off-road, all-terrain vehicles. FAC ¶ 10. Plaintiff has used the term "Zero" as a trademark in connection with its electric motorcycle products since 2007. *Id.* ¶¶ 2, 12. Plaintiff registered the "Zero Motorcycles" trademark with the United States Patent and Trademark Office (USPTO) in 2009, and that trademark has become widely known among U.S. consumers as an indicator of quality

2

and source of Plaintiff's electric motorcycles. *Id.* ¶¶ 2, 12, 13; *see also id.*, Ex. A (USPTO registrations). Plaintiff also registered a family of Zero-formative trademarks to designate the various models of electric motorcycles it sells. *Id.* ¶¶ 3, 13, Ex. A. Plaintiff alleges that "[o]nly the most avid consumers would know the difference between a ZERO S and a ZERO MMX bike; the vast majority refer to both as ZERO electric motorcycles, which have been on the market for ten years and have achieved much public fanfare." *Id.* ¶ 32. Plaintiff has used Zero Motorcycles and related marks extensively, exclusively, and continuously throughout the world in connection with its motorcycles, including its all-terrain motorcycles. *Id.* ¶ 14.

Well after Plaintiff's products were established in the marketplace for electric all-terrain vehicles, Plaintiff alleges that Defendants Nikola Motor Co., Nikola Powersports, LLC, Nikola Corp., and Bluegentech, LLC used and attempted to register confusingly similar trademarks in connection with their promotion, manufacture, and sale of an electric all-terrain vehicle named the "Nikola Zero." *Id.* ¶¶ 4, 15. Plaintiff alleges that in August 2017, Defendants announced they would begin to accept deposits from prospective buyers of the Nikola Zero vehicle. *Id.* ¶ 16. The vehicle marketed by Defendants is not an electric motorcycle, but a four-person, battery-powered four-wheeled utility task vehicle (UTV). *See id.*, Exs. C, D. The announcement was made in a press release and on Defendants' webpage. *Id.* The FAC attaches screenshots of several pages from Defendants' website; the banner running at the top of each page simply invited visitors to "Reserve Your Zero." *Id.*, Ex. C. Elsewhere throughout the website, Defendants used the Nikola mark as a stand-alone mark, and did not mention the Zero mark. *Id.* Yet elsewhere, Defendants separated "Nikola" from "Zero" with a lightning bolt symbol. *Id.*, Ex. D at ECF p.45. The press release consistently refers to "Nikola Zero" in plain type. *Id.*, Ex. D.

Defendants marketed the Nikola Zero branded UTV to the same or similar customers to whom Plaintiff marketed its Zero-branded goods, in overlapping channels of trade. FAC ¶ 5. Plaintiff alleges that Defendants intend to create the impression with the public that their all-terrain vehicles originate with, are produced by, are licensed by, or are somehow sponsored by Plaintiff. *Id.* ¶ 19. The Nikola Zero mark, as used by Defendants, so resembles Plaintiff's marks such that it is likely, to cause confusion, mistake, or to deceive when it is applied to all-terrain

3

electric vehicles. *Id.* ¶ 20. The FAC alleges that "prospective consumers are confronted in the same trade channels with the purported NIKOLA ZERO electric all-terrain vehicle, which looks strikingly similar to the ZERO family of electric motorcycles, and even uses a logo font and black/white color scheme nearly identical to Plaintiff's logo font and color scheme." *Id.* ¶ 33; *see also id.* ¶ 30. Defendants did not cease their efforts to use the Zero mark after Plaintiff advised them of the infringing nature of their use. *Id.* ¶¶ 21-22.

On May 6, 2016, Defendant Bluegentech applied for a federal registration of the Nikola Zero trademark in connection with electric powered all-terrain vehicles; Plaintiff opposed the application, and the opposition proceedings are ongoing before the Trademark Trial & Appeal Board. *Id.* ¶ 23; *see also id.*, Ex. E (Bluegentech application to use Nikola Zero mark in connection with "motor vehicles; structure parts for motor vehicles; automobiles; structure parts for automobiles; electric automobiles; structural parts for electric automobiles; vehicles, namely, side-by-sides, UTVs (Utility Task Vehicles), ROVs (recreational off-highway vehicles), MOHUVs (multipurpose off-highway utility vehicles) motor vehicle bodies; trim panels for vehicle bodies."). Defendants advised Plaintiff that they had rebranded their UTV as the "Nikola NZT" and did not intend to use the "Nikola Zero" mark in connection with their vehicle; yet, Defendants have maintained their USPTO trademark application for Nikola Zero. *Id.* ¶ 24. Maintenance of that application requires Defendants to declare they have a bona fide intention, and entitlement, to use the mark in commerce. *Id.* Defendants have refused Plaintiff's request to withdraw their application and to confirm they will not use any Zero-formative mark in the future in connection with land vehicles. *Id.* Based on this course of conduct, Plaintiff alleges Defendants' conduct is intentional. *Id.* ¶¶ 15, 25.

The FAC alleges a claim for federal trademark infringement; a federal unfair competition claim under the Lanham Act, 15 U.S.C. § 1125; a trademark infringement claim under California law, Cal. Bus. & Prof. Code § 14200 et seq.; and an unfair competition claim under California law, Cal. Bus. & Prof. Code § 17200, proceeding only under the unfair and unlawful prongs of that statute. *See* FAC; Opp'n at 17 n.2.

Plaintiff requests injunctive relief, an accounting of revenues and profits, damages

4

1 sustained as a result of Defendants' willful acts, and reasonable fees, expenses and costs. *See id.*,
2 Prayer for Relief.

**REQUEST FOR JUDICIAL NOTICE**

Defendants ask the Court to take judicial notice of a December 18, 2017 press release and pages of their website, which they contend establish that they have rebranded their UTV and are no longer using "Zero" in their marketing materials. Mot. at 8; RJN, Ex. A at ECF p.4 ("Named 'Nikola Zero' in development, the UTV has now been formally named Nikola NZT to reflect the updated design and performance in preparation for production") & Ex. B at ECF p.8 ("Nikola Zero is now Nikola NZT"), Dkt. No. 37-1. They also ask the Court to take judicial notice of a compilation of third party websites, which Defendants argue demonstrates the word "zero" is often used in the industry to reference zero-emissions vehicles. RJN, Ex. C.

On a motion to dismiss, a court normally may not look to matters beyond the complaint without converting the motion into one for summary judgment. *See Mack v. S. Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by AstoriaFed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). There are two exceptions to this rule: a court may take judicial notice of (1) material which is either submitted as part of the complaint or necessarily relied upon by the complaint (the "incorporation by reference" doctrine); and (2) matters of public record pursuant to Federal Rule of Evidence 201. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). To be judicially noticeable pursuant to Rule 201, a fact must not be subject to reasonable dispute because (1) it is generally known within the territorial jurisdiction of the trial court; or (2) it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may not take judicial notice of a fact that is "subject to reasonable dispute." *Lee*, 250 F.3d at 689-90 (quoting Fed. R. Evid. 201(b)) (judicial notice improper "for the truth of the facts recited therein").

1. Rule 201

Defendants, who are based in Utah, do not demonstrate how facts pertaining to the marketing of their UTV in their December 2017 press release (RJN, Ex. A) and website pages (*id.*,

Ex. B), nor facts pertaining to the naming of other vehicles (*id.*, Ex. C), are "generally known" within the Northern District of California. Nor do they establish these documents are sources whose accuracy cannot reasonably be questioned. Neither of the two cases Defendants cite (Mot. at 9; Reply at 3) supports their argument that these materials are judicially noticeable:

- In *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005), the plaintiffs attached to their complaint a photograph and caption they argued were defamatory. The Ninth Circuit took judicial notice of copies of the webpages that surrounded the page featuring the allegedly defamatory photograph and caption because "in order to access the photograph [attached to the complaint], one must first view, at a minimum, the nine photographs that precede it and the EXPN.com home page." *Id.* at 1076-77. Unlike the pages that viewers would necessarily have seen to view the allegedly defamatory image in *Knievel*, there is no indication here that customers viewing the old version of the website or press release would necessarily have seen the new versions Defendants attach to the RJN. Defendants here do not demonstrate that customers who pre-ordered the UTV could only do so through the new website, or that customers who pre-ordered the UTV did not do so after reviewing the versions of the website or press release attached to the FAC. With respect to the exhibit containing images of other products that allegedly use the mark "zero", Defendants similarly do not establish that potential consumers were aware of the use of "zero" by other manufacturers, much less that they saw the photographs Defendants attach to the RJN.
- The district court in *Gerritsen v. Warner Bros. Entertainment, Inc.*, 112 F. Supp. 3d 1011 (C.D. Cal. 2015), refused to take judicial notice of the documents at issue in that case.[1] For example, it refused to take judicial notice of press releases because courts in the Ninth Circuit take judicial notice of such documents in "a narrow set of circumstances not at issue here—e.g., in securities cases for the purpose of

---

[1] Defendants do not cite any specific passage of this 38-page decision, nor identify the proposition for which they are citing it. *See* Mot. at 9.

6

showing that particular information was available to the stock market." *Id.* at 1028. Courts generally decline to do so in other circumstances "because often, the accuracy of information in newspaper articles and press releases cannot be readily determined and/or can be reasonably questioned." *Id.* (citing Fed. R. Evid. 201). The district court explained that, "to the extent the court *can* take judicial notice of press releases and news articles, it can do so only to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.' Gerritsen clearly seeks to have the court take judicial notice of the truth of the facts stated in the various press releases and news articles. This the court cannot do." *Id.* at 1029 (emphasis in original) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)). Defendants' request to take judicial notice of *their own* press release and website is even more problematic: "Federal courts considering the issue have expressed skepticism as to whether it is appropriate to take judicial notice of information or documents appearing on websites that are created and maintained by a party to the litigation." *Id.* at 1030 (citing cases).

In addition, Defendants ask the Court to take judicial notice of these documents specifically for the truth of the facts recited therein: that they have rebranded the UTV and no longer use "Zero" in their marketing or on their product; that no sales were made prior to renaming the vehicle; and that no other vehicles in their product line bear the "Nikola Zero" mark. Mot. at 6. Assuming the Court could judicially notice the fact that Defendants' December 2017 press release and the undated pages from their website do not market their UTV using the word "zero", it still could not take judicial notice of them for the truth of the matter they asserted—i.e., that Defendants never actually did, or do not currently, use "zero" when marketing their UTV. *See, e.g.*, *Von Saher*, 592 F.3d at 960 ("The Museum also moves for judicial notice of the fact that various newspapers, magazines, and books have published information about the Cranachs. Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"); *Crandall v.*

7

*Starbuck Corp.*, 249 F. Supp. 3d 1087, 1099 (N.D. Cal. 2017) (taking judicial notice of website solely for the purpose of establishing the team did not list the school as one of its home fields, "not for truth of the matter asserted—i.e., not to show that the team never actually played there."). Similarly, to the extent the Court could take judicial notice of third party websites showing that other companies have used the word "zero" in connection with zero emissions vehicles (RJN, Ex. C.), the Court cannot take judicial notice of these for the purpose of establishing there is no likelihood of confusion or no infringement.

2. Incorporation by Reference

In their Reply, Defendants argue Plaintiff "does [not] challenge Defendants' claim that these documents are subject to consideration under the incorporation by reference doctrine." Reply at 3.[2] The FAC attaches and relies upon an August 2017 press release and pages from Defendants' website that are undated. Defendants argue the FAC "depend[s] on the[ ] continued assertion that Defendants are *currently* marketing the Nikola Zero UTV both in their promotional materials and on their website." Reply at 3 (emphasis in original). As such, they contend the later December 2017 press release and pages from their website, which are also undated, are subject to judicial notice pursuant to the incorporation by reference doctrine. *See id.* First, Defendants do not analyze how these documents are judicially noticeable under the incorporation by reference doctrine. *See id.*; *see also* Mot. at 8-9. Second, the FAC does not depend on the assertion Defendants are *currently* marketing the vehicle. *See* FAC ¶ 4 (Defendants engaged in trademark infringement by using and attempting to register confusingly similar trademarks); *id.* ¶ 18 ("Defendants' press release and outreach, activities at trade shows, and purported acceptance of deposits for the prospective NIKOLA ZERO all-terrain vehicle are all very recent activities intended to associate the Defendants' future all-terrain vehicle with the Plaintiff's Marks."); *id.* ¶ 22 ("Plaintiff also learned that Defendants had engaged in substantial press outreach, and were accepting hard money deposits from prospective purchasers."); *id.* ¶ 24 ("Defendants also stated that they had advised Plaintiff that 'Defendants rebranded their UTV as the 'NIKOLA NZT' and

---

[2] Plaintiff's failure to do so is understandable, since Defendants did not explicitly argue this point in their Motion. *See* Mot. at 8-9.

8

did not intend in the future to use the 'NIKOLA ZERO' mark in connection with its UTV."); *id.* ("Plaintiff has requested that Defendant Bluegentech withdraw its application to register the NIKOLA ZERO mark and to confirm that none of the Defendants' nor their affiliates will use any ZERO-formative mark in the future in connection with land vehicles. But Defendants have refused both requests. Therefore, Defendants purportedly maintain a bona fide intent to use that mark in connection with such products."); *id.* ¶ 25 ("the use and attempted registration of the mark NIKOLA ZERO by Defendants as aforesaid was done and continues to be done with the purposes of" injuring Plaintiff and confusing the public). Third, unlike the pages surrounding the allegedly defamatory webpage at issue in *Knievel* (Reply at 3), Defendants have not established that potential customers who saw the documents Plaintiff attached to the FAC would have also seen the documents Defendants ask the Court to judicially notice.

3. Summary

Because Defendants fail to establish the documents attached to their RJN are judicially noticeable under either Rule 201 or the incorporation by reference doctrine, the Court declines to consider these documents in connection with the Motion to Dismiss.

**DISCUSSION**

**A. Trademark Infringement under Lanham Act, Common Law Trademark Infringement, and Lanham Act Unfair Competition**

1. Applicable Law

The Lanham Act requires a plaintiff pursuing a trademark infringement claim to present evidence of a valid mark, that the mark has been used in commerce, and that the defendant's use of the mark is likely to cause confusion, or mistake, or to deceive as to sponsorship, affiliation, or the origin of the goods or services in question. *See* 15 U.S.C. §§ 1114; *see also Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (to plead a trademark infringement claim under the Lanham Act, Plaintiff must plead the existence of a trademark and the subsequent use of that mark by another in a manner likely to create consumer confusion).

The parties also agree that the elements of common law trademark infringement and Lanham Act unfair competition claims are substantially congruent with those of a Lanham Act

trademark infringement claim. *See* Mot. at 8, 12; Opp'n at 17. To state such claims, Plaintiff must allege: (1) ownership interest in the mark, and (2) the likelihood of the infringing mark being confused with the Plaintiff's mark. *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 947-48 (N.D. Cal. 2005) (California common law) (citing *Am. Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir. 1979)); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) (unfair competition under the Lanham Act). An ownership interest is demonstrated through priority of use. *See Wood*, 375 F. Supp. 2d at 948 (citing Am. Petrofina, 596 F.2d at 897 ("[W]hosoever first adopts and uses a trade name, either within or without the state, is its original owner.")); *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use.").

Plaintiff also alleges an unfair competition claim under California statutory law. Claims of unfair competition based on trademark infringement brought under California's Unfair Competition Law (UCL) are substantially congruent to claims made under the Lanham Act. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008); *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).

Thus, the sufficiency of each of Plaintiff's claims can be evaluated under the same standard.

2. <u>Analysis</u>

Defendants move to dismiss on the ground Plaintiff has failed to sufficiently allege a likelihood of confusion. *See* Mot. at 9-12.[3]

Plaintiff alleges Defendants announced in August 2017 that they would begin to accept

---

[3] For the sake of thoroughness, the Court finds Plaintiff sufficiently alleges the first two elements of a trademark claim. The FAC sufficiently alleges Plaintiff's ownership of a mark. Registration of a trademark with the USPTO provides constructive notice of a registrant's rights to all potential infringers. 15 U.S.C. § 1072. Plaintiff alleges it registered the Zero Motorcycles trademark with the USPTO in 2009, and subsequently registered a host of Zero-related trademarks (Zero DS, Zero MX, Zero S, Zero FX, Zero SR, Zero DSP, Zero FXP, Zero SP, Zero MMX, Zero FXS, Zero DSR), with the USPTO for "electric vehicles, namely, motorcycles" or "electric motorcycles." FAC ¶¶ 2-3, 13, 28-29 & Ex. A. The FAC also alleges use of the mark in commerce by asserting facts that Plaintiff manufactures and sells electric motorcycles, including off-road, all-terrain vehicles, under the Zero Motorcycles and related marks. It alleges Plaintiff has used its principal mark in commerce since 2007, and has become well-known with consumers who associate its mark with it. FAC ¶¶ 2, 12, 14, 28, 31.

10

deposits from prospective buyers of the Nikola Zero vehicle. FAC ¶ 16. Plaintiff's Zero-branded motorcycles are marketed through the same trade channels as Defendants' UTV, and are purchased by the same prospective customers as might be interested in the UTV. *Id.* ¶ 31. Defendants "had engaged in substantial press outreach, and were accepting hard money deposits from prospective purchasers." *Id.* ¶ 22. Defendants' website encouraged visitors to "reserve your zero." *Id.* Plaintiff alleges Defendants used this mark when advertising their UTV to the same channels of customers that purchase Plaintiff's all-terrain motorcycles. *Id.* ¶ 31. Plaintiff alleges that "Defendants' press release and outreach, activities at trade shows, and purported acceptance of deposits for the prospective NIKOLA ZERO all-terrain vehicle are all very recent activities intended to associate the Defendants' future all-terrain vehicle with the Plaintiff's Marks." FAC ¶ 18; *id.* ¶ 19. The "Nikola Zero" mark "so resembles Plaintiff's marks as to be likely, when applied to Defendants' [UTV], to cause confusion, or to cause mistake, or to deceive." *Id.* ¶ 20; *see also id.* ¶¶ 20, 30, 32. "The visual similarities of the two marks and the physical and design similarities of the electric vehicles, increases the likelihood of public confusion." *Id.* ¶ 33. Defendants also applied to register the trademark "Nikola Zero" and declared that they have a bona fide intent to use the mark in connection with their UTV if they prevail before the Trademark Trial & Appeal Board. *Id.* ¶¶ 23-24.

Instead of attacking the legal sufficiency of these allegations, Defendants argue there can be no risk of confusion and no damages because (1) the marks are dissimilar; (2) Defendants have rebranded their UTV and are not currently using "Nikola Zero" and "there is zero chance that the Defendants will rebrand the UTV at issue the 'Nikola Zero' at this point or in the future"; (3) there are no products yet on the market that might cause confusion, as the UTV is still in preproduction and no sales were made under the Nikola Zero or the Nikola NXT names; (4) the UTV is a "totally different vehicle from Plaintiff's motorcycles"; (5) the term "zero" is frequently used in the industry to describe all types of zero-emissions vehicles; and (6) Defendants' pursuit of their trademark application is a constitutionally protected right of free speech and cannot reasonably be construed as a bona fide intent to infringe Plaintiff's marks willfully. Mot. at 5-7, 10-12.

First, most of these arguments rely on evidence that is not properly before the Court on a

11

motion to dismiss[4], that is, evidence which purports to dispute the core facts alleged in the FAC. Defendants may be able to prevail on summary judgment based on evidence supporting these arguments; however, on a motion to dismiss, the Court must accept Plaintiff's well-pleaded allegations as true and construe them in the light most favorable to Plaintiff. *Twombly*, 550 U.S. at 550; *Erickson*, 551 at 93-94 (2007); *Vasquez*, 487 F.3d at 1249. The Court denies the Motion to Dismiss to the extent it is based on (2), (3), (4), and (5). For the same reason, the Court cannot accept Defendants' invitation to find the consumer of the parties' products are not impulse buyers (Reply at 5), or to examine the lack of evidence of actual confusion (*id.* at 6).

Second, the Court cannot find that, as a matter of law, Plaintiff's all-terrain electric zero-emissions motorcycles are so substantially different from Defendants' UTV so as to "undermine any likelihood of confusion." Mot. at 10-11; Reply at 4. Defendants rely upon *Toho Company, Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981), for the proposition that the Court can dismiss the complaint at the pleadings stage based on the absence of likelihood of confusion. Mot. at 10; Reply at 4. In *Toho Company*, the Japanese corporation that produced movies and cartoons featuring Godzilla sued Sears for manufacturing garbage bags marketed as "Bagzilla." 645 F.2d at 789-90 (garbage bags were sold "in boxes which designate the bags as a Sears product, but which also display the word 'Bagzilla,' depict a 'comic, helpful, personified reptilian creature,' and carry the legend 'Monstrously Strong Bags.'"). The Ninth Circuit recited the relevant allegations: (1) the plaintiff produced only literary works and toys, while the defendant produced garbage bags; (2) the plaintiff used the mark 'Gozilla', the defendant used 'Bagzilla'; (3) the defendant placed the "Sears" name prominently on the package; (4) Bagzilla was a humorous caricature rather than an exact copy; and (5) the marketing channels were different. *Id.* at 790. Based on these facts, the Ninth Circuit held the goods were unrelated as a matter of law. *Id.* The Ninth Circuit further found the contention Sears intended to confuse was implausible because Sears only meant to make a pun. *Id.* at 791.

---

[4] Moreover, this information is presented only through argument and the (denied) RJN; Defendants make no effort to lay any foundation or present the information in proper evidentiary form.

12

The allegations in the FAC are markedly different and do not lend themselves to the same obvious analysis. Plaintiff's and Defendants' products share many more similarities than the products examined in *Toho Company*. Plaintiff and Defendants produce all-terrain electric sports vehicles, albeit different types of vehicles[5], and the FAC alleges the marketing channels for the electric all-terrain vehicles are the same and that the products are purchased by the same prospective consumers. FAC ¶¶ 31, 33. Unlike the humorous caricature Sears used to suggest its garbage bags were monstrously strong, both parties use "Zero" in the names of their products to connote a lack of emissions, and Plaintiff alleges the parties' marks look similar and "leave the same commercial impression on the public." *Id.* ¶ 32; *see also id.* ¶ 33 ("The visual similarities of the two marks and the physical and design similarities of the electric vehicles, increases the likelihood of confusion."). Unlike the Sears brand, which consumers were likely to know was not a movie producer, the FAC alleges that "Nikola" is a "new company, with very little public recognition – nobody knows the Nikola name, or who they are or what they do" such that consumers would not necessarily know Defendant operated in a different field as Plaintiff and will "mistakenly assume the Nikola Zero vehicle is in fact a new vehicle from Plaintiff's line of Zero electric vehicles." *Id.* ¶ 33; *see also id.* ¶ 19. There is no attempt at humor or puns being made here.

In *Murray v. Cable National Broadcasting Co.*, 86 F.3d 858, 860 (9th Cir. 1996) (*see* Mot. at 10; Reply at 4), the Ninth Circuit reiterated that a district court could decide there was no likelihood of confusion as a matter of law. The Ninth Circuit affirmed there was no likelihood of confusion as a matter of law in a case where the plaintiff did not claim he offered the same services as the defendant and did not contend he shared any customers or potential customers with the defendant. *Id.* at 861. Because the services offered by those parties were unrelated, the Ninth Circuit held there was no likelihood of confusion as a matter of law. *Id.* But here, the FAC

---

[5] *Cf. West Coast Corvettes, Inc. v. MV Mktg., Inc.*, 2012 WL 12882014, at *11-12 (C.D. Cal. Dec. 13, 2012) (where both parties sold used Corvettes and Corvette parts, had repair and service shops specializing in Corvettes, and catered to Corvette enthusiasts, fact that one party specialized in earlier models and the other in later models did not detract from similarity and relatedness of goods).

13

specifically alleges the vehicles being marketed by Defendants are being purchased by the same potential consumers who purchase Plaintiff's vehicles. *See supra*. The FAC does not allow the Court to decide these issues as a matter of law.

Third, the Court also cannot find, as a matter of law, that Plaintiff's Zero Motorcycles and related family of marks are so dissimilar from Defendants' Nikola Zero mark that there is no likelihood of confusion. Mot. at 10; Reply at 5-6. The FAC alleges the two marks are "nearly identical" (FAC ¶ 33), and attaches photographs of them. While the image attached to the December 2017 press release features a logo that separates Nikola and Zero with a lightning bolt, pages from Defendants use the mark "zero" in isolation, for example when inviting visitors to "reserve your zero." Moreover, the marks both use typeface without glaringly distinguishing features. *See also* Reply at 5 ("the Nikola Zero mark did not have any additive features or letters"). For the most part, Nikola simply wrote "Nikola Zero" and did not use any stylistic elements that would differentiate it from the Zero which Plaintiff uses for its marks. At this stage, the FAC alleges facts sufficient to show that "Zero" as used in both marks is the dominant element in sight, sound, and meaning (zero emissions).

Fourth, the current use of the infringing mark is not required to state a claim.[6] *See Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) (Section 32 of the Lanham Act, 15 U.S.C. § 1114, "does not require that the defendant be in possession of counterfeit goods at the time of the offer or that the defendant make an actual sale. An offer to sell without more will suffice to establish liability."). The FAC alleges Defendants offered the UTV for sale under the Nikola Zero trademark; this is sufficient.

Fifth, Defendants argue they applied to register the mark before learning of Plaintiff's objection to their mark. Reply at 5. But whether Defendants were aware of Plaintiff's *objection* is not the relevant inquiry: Plaintiff alleges Defendants were aware of its marks before filing their trademark application and engaging in press outreach. FAC ¶ 34. That is sufficient to allege Defendants intentionally infringed on Plaintiff's mark.

---

[6] Defendants appear to abandon this argument as they do not respond to it in their Reply.

14

Finally, whether Defendants used the mark in bad faith is not an element of Plaintiff's prima facie case. *See supra*. In any event, Plaintiff alleges facts other than Defendants' trademark application to support its allegation of bad faith. *See* FAC ¶¶ 34, 43.[7]

**B.     California Unfair Competition Law – Standing**

To allege standing under the UCL, Plaintiff must allege facts sufficient to show it lost money or property as a result of Defendants' unfair business practices. Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011) (under California's UCL, standing extends to "a person who has suffered injury in fact and has lost money or property as a result of unfair competition"; to satisfy this standing requirement, "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury . . . ."). Here, the only allegations regarding the money or property Plaintiff alleges losing are the attorneys' fees and costs of suit. FAC ¶¶ 35, 41, 47, 50. Costs of suit are not sufficient to confer standing under the UCL. *See Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011) (summarizing *Kwikset* and observing that "Plaintiff fails to cite any authority establishing that attorney's fees incurred in bringing a UCL claim are sufficient to confer standing under § 17204. Under Plaintiff's reasoning, a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit."); *see also Seitzinger v. Select Portfolio Servicing, Inc.*, 2018 WL 2010993, at *4 (N.D. Cal. Apr. 30, 2018 (citing same).

Neither of the cases Plaintiff cites dictates a different conclusion. *See* Opp'n at 18. In *West Coast Corvettes*, 2012 WL 12882014, at *12, the court did not address standing, did not cite

---

[7] It may be true that "[t]he law is clear that the act of filing a trademark application with the [USPTO] is protected by the anti-SLAPP statute as a writing made before an executive or other official proceeding authorized by law." *Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1045 (S.D. Cal. 2017) (citing Cal. Civ. Proc. Code § 425.16(e); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 596 (9th Cir. 2010) (concluding that the filing of a trademark application is protected by the anti-SLAPP statute as a "writing made before . . . [an] executive [or] . . . other official proceeding authorized by law" and may also be a "writing made in connection with an issue under consideration . . . by . . . [an] executive . . . body, or any other official proceeding"). But Defendants here have not filed an anti-SLAPP motion, and they fail to acknowledge that to prevail on such a motion, they would need to establish Plaintiff's suit "arises from" Defendants' protected act of filing a trademark application. *See Mindys*, 611 F.3d at 597. Here, the FAC alleges Defendants' application shows their continued intent to use the mark Plaintiff alleges to be infringing, and Defendants' bad faith in using the mark in the first place; however, the suit "arises from" their use of the mark in commerce when offering the Nikola Zero for pre-purchase.

*Kwikset*, and did not discuss the allegations of lost money or property. *Lahoti v. Vericheck, Inc.*, 636 F.3d 501 (9th Cir. 2011), was decided before the California Supreme Court decided *Kwikset*; it also does not address standing.

The Court accordingly **GRANTS** Defendants' motion to dismiss the UCL claim on the ground Plaintiff failed to allege it lost they type of money or property sufficient to confer standing on this claim.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss the federal trademark infringement claim, the federal unfair competition claim, and the state trademark infringement claim, and **GRANTS** the Motion to Dismiss the California UCL claim based on lack of standing.

No later than June 20, 2018, Plaintiff shall either file (1) an amended complaint if it can allege that it has lost money or property as a result of Defendants' conduct, or (2) a notice it does not intend to amend. Defendants' response shall be due 20 days after Plaintiff's filing.

The parties shall appear for an initial case management conference on July 19, 2018. Their joint case management statement is due no later than July 12, 2018.

**IT IS SO ORDERED.**

Dated: June 14, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge